Case No. 24-13819, Amazon.Com Services v. National Labor Relations Board. Mr. Lin. Good morning and may it please the Court. Albert Lin on behalf of Amazon. I have with me at council table my colleague Kevin Elicker. The Board's new mandatory meeting rule violates both the First Amendment and the National Labor Relations Act. Before we get to the merits, can we talk about your standing? Of course, Your Honor. And especially for me, can we talk about statutory standing? I'm skeptical that you have statutory standing under 10-F. In our Deaton case, can you sort of explain to me why it is that you think you've got statutory standing given the fact that you won? Of course, Your Honor. So a couple points on statutory standing. I'll start with the Deaton case. The Deaton case says that you can't challenge findings and conclusions behind the ultimate, the order here. But we have two, I think there's two reasons why that doesn't apply. The first is the mandatory meeting rule is not a mere finding or conclusion. The Board even refers to it at one point as extraneous rationale. It is a grant, I would consider it sort of a partial grant of what the General Counsel asked for below. She asked that the Board overrule the Babcock and Wilcox line of precedent and establish a new binding rule of conduct, and not even on a going forward basis, establish a new binding rule of conduct and apply it to this case. But you prevailed, right? With respect to that piece of the Board's argument, you prevailed. Don't apply it to me. With respect to that piece, Section 10-F says if any person aggrieved by a final order granting in part or denying in part the relief sought. But isn't the relief sought, please dismiss the complaint with respect to my client, and wasn't the complaint dismissed with respect to your client? The relief sought? I think the relief sought here, there's, we sought a couple, there's two ways to look at this, I think, the two sides of the coin. What are the different forms of relief that were sought? But I think that the sort of more logical way to look at it is what did the General Counsel ask for? And she asked for two things. She asked for a new rule of conduct and then she asked to have it applied to this case. Your Honor, if you look at the order under review in the introduction, the first page, the only thing they talk about is this new rule. They don't even talk about the other unfair labor practices rulings. I think it's, that would be an awfully odd way to talk about something that is just a supporting finding and conclusion. I think there were two, with respect to the mandatory meeting rule, there were two sort of decisions that were made with respect to the relief that the General Counsel sought. One was they granted her request to overrule 75 years of precedent and establish a new rule of conduct. There are findings and conclusions that support that grant of relief. And then there was a separate set of reasoning on a separate decision as to whether that new rule of conduct could apply to Amazon in this case, and they decided not to do so based on reliance and other things. So I guess though, if you look, and you can tell me if you don't think I've got this right, but if you look at what is like the analogy or the, to the decretal language in the Board's order, it seems to me that it says three things, right? It says order. The Board has ordered, you know, it ordered certain remedial action, right? We can talk about the things that you like truly lost on. Then it ordered that certain paragraphs of the complaint be severed. And then it ordered that the complaint be dismissed insofar as it alleged violations of the NLRA not found. And with respect to that, you sort of achieved your objective, which was dismissal, right? So if we're looking at decretal language, don't you kind of win? But I think the answer to that is you're not just looking at decretal language. I think, again, what Section 10F says is are you aggrieved by final order granting in part or denying in part the relief sought? And I think this is a grant in part. And, Your Honor, I want to make something— Could any other employer have appealed? I don't think that's— They're all aggrieved. Of course, Your Honor. I don't think that's a question you have to decide in this case. I don't, but I'd like you to try to answer it. Yes. And I think, as the Supreme Court has said, this kind of language, aggrievement, right, is a zone of interest test about whether Congress intended there to be a cause of action. I think you could conclude that, at the very least, when the Board promulgates a new binding rule of conduct that imposes immediate injury, and, Judge Newsom, we didn't talk about Article 3 standing, but I think that's really important here. But when it— But you've got to, you know, navigate both hurdles. I agree. But I think it gets to—it's important to consider the consequence of what they're asking for and how that fits with what the Supreme Court has said statutory standing is about. Statutory standing, this Court, the Supreme Court said in the R.J. Reynolds-Babe case that came out this term, the Thompson case, the Lexmark case, is about figuring out whether Congress—where you can reasonably presume that Congress intended there to be a cause of action. And I think, in a different case, with a different party, a different person, right, who wasn't subject to the proceeding where the rule was promulgated, where the General Counsel got her relief, I think you might conclude that you can't reasonably presume that Congress intended that other company to come in. But I think this gets me to my point about the consequence here. If you think that there is Article III standing, and I think that there is, and I'd love to address the 28-J that came in on Friday, but I think under the objective chill standard, there is absolutely immediate speech harm that happened when this order came out, has been ongoing, is happening today, and is going forward. And the consequence of the Board's position is that nobody can challenge that immediate harm until they choose to exercise their—they call it prosecutorial discretion—to apply it to someone in the future. That harm goes on. Not even the party in the proceeding that was subject to the new— Can I ask you this? Before we pivot to Article III, and I'm happy to go there, but before we pivot there, I hadn't really thought about the implication, if any, of the 28-J for statutory standing. I had been thinking about it solely in terms of what it may or may not pretend for Article III, but if your argument on statutory standing is, yeah, look, we won in the decretal because the complaint was dismissed with respect to mandatory meetings, but we kind of lost with respect to aggrievement in part because the NLRB asked to overrule Babcock versus Wilcox, and they did, and that stunk for my client big time. That's bad for us. We lost. But now they say, yeah, maybe not. So what about with respect to statutory standing? Does the 28-J impact your statutory standing at all? Does it undermine the argument that you just made about sort of the overruling of Babcock being like the thing that gives you statutory standing? I don't think it does, and then I also have a second statutory standing argument that I'd like to make sure I don't lose track of, but on this first one, I don't think it does because I think this first sort of understanding of statutory standing is, is there an adverse effect, in fact, that's what the D.C. Circuit said in the retail clerk's case, and I think a lot of courts have adopted that, from a grant of relief. And so I don't think anything about what they've said here changes whether there's a grant of relief. That's our position that there is a partial grant of relief. Is there an adverse effect, in fact, I think comes to the Article III question. Before I turn to Article III, if I could, we do have a second theory of statutory standing based on the phrase such order. Even if you don't think we are aggrieved by the mandatory meeting rule itself, that grant of relief, we are indisputably aggrieved by the other portions of the decreto language, just use them if that's where you want to go, and such order means such order. That's what the Supreme Court said in Baltimore. That's what the Supreme Court said in Yamaha. I think both of those cases stand for the proposition that where only parts of an order triggers the statutory requirement, when it says in an undifferentiated way the order, the whole order comes in, and then you get to Article III. Yeah, what do you do with Schofield though? Admittedly, DICTA, but Schofield seems to authorize kind of the parsing of unitary orders into suborders. So a couple answers to Schofield. One, DICTA, it was just about intervention. Two, I think they're over-reading Schofield. So I think the interveners in this case say something like Schofield says that the charged party is aggrieved only, I think that word is in their brief, only by the remedial part of the order that went against them. That word only is not in Schofield. Schofield was making some observations about situations where you are aggrieved by a hybrid order, but it wasn't setting forth the full universe, and again I think it was DICTA. So let me ask you one more, and then I'm so sorry to have hijacked your argument about statutory standing, but so with respect, you said to the such order theory that this, I take you to mean like this is a unitary thing, and once we're aggrieved by part, we're aggrieved by all, basically. What about the fact that, again, the decretal language says, and I said there are kind of three things that it does, and with respect to two and three, and it's three here, which is like dismissed the complaint insofar as it alleged violations of the NLRA not found, right? With respect to two and three, it says it is further ordered that. So does that subdivide the order Schofield style? I understand your question, Your Honor. I mean, I think the answer to that is no. The phrase hybrid order is used in Schofield. I think that's what the court is contemplating, is that you can have order that does two different things. Someone can win. The other person can lose on different charges. I think whether something constitutes an entire order, we would say is up to the board. We filed a single petition for review seeking review of the order. They have not contested that we should have filed, contended that we should have filed four petitions for review. One of the outstanding questions here, a finality that I think is resolved by this court's armas case, is that they chose to sever one of the charges and decide that separately and has been decided. And that's up to the board and how it wants to sort of do an order. Do they want to do a hybrid order? Do they want to do, you know, one or the other or separate them? It's a practical question for them. So I think both grounds give us statutory standing. As to Article 3, I think the objective chill analysis of speech first and then sort of followed on by the Supreme Court's recent first choice case makes very clear that a reasonable would-be speaker would change, trim their sails, if they will. They filed 28J that talks about a motion that was filed. Two answers to that. The first is the most that the motion establishes is that there's prosecutorial discretion. Prosecutorial discretion is just another way of saying that the order, the rule is not self-enforcing. And the Supreme Court said in first choice that that's not enough to get rid of objective chill. And the second is, if you actually look at the motion that's attached, it's not even the General Counsel exercising prosecutorial discretion with respect to the Amazon rule. What the General Counsel was saying was she was recognizing that the Amazon rule doesn't apply to the facts in that case because the facts in that case arose before the Amazon rule because the Amazon rule is prospective only. It wouldn't apply. I see my time is almost up. No, you're going to get some more time. Thank you, Governor. Can you please give him six more minutes? And we'll record the same time to the NLRB's counsel. Okay, so let's talk merits. Thank you, Your Honor. So on merits- Wait, wait, wait. I gave you time, so I got a little prerogative to ask you some questions. Of course. I'm sorry. I didn't see your mouth open there. Please, Your Honor. I'm just joking. Under your view, let's put First Amendment aside, okay? Let's just do the act. Can you, Amazon, discipline an employee for not attending any or part or all of a mandatory captive during work hours meeting at which the employer provides his views on unionization? Yes. Okay. Under your view of the act, is every captive meeting during work hours at which the employer provides its views on unionization exempted from any unfair labor charge, regardless of circumstances? No, no. Okay, so I don't want to put words in your mouth because I know this is a tricky line drawing exercise for everybody. So you would agree, I think, with after Babcock, and I think it was still in the 50s, the NLRB has a couple of decisions in which they say certain types of meetings run under certain circumstances during which certain statements were made constitute an unfair labor practice. Correct. Do you agree that that's an appropriate reading of the act? Yes, Your Honor. We're not challenging those decisions. I think you have put your finger on exactly the dichotomy between the two positions here. The Board is asking for a categorical rule that turns on only the presence of two facts, required attendance at the meeting and the expression of views on unionization. And they want to say that every time those two things happen, there is an unfair labor practice. Ruling for us would not preclude the case-by-case analysis where the Board looks at what actually happens in these meetings, whether there's more than the requirement of attendance, whether the speech is threatening or coercive in some way, and evaluates whether those additional facts make something an unfair labor practice. Would I be right in saying then that Babcock was too broad a ruling? Because it has no explanation. It has no discussion. It just says, based on 8c, the prior decisions are now incorrect and invalidated, but it doesn't tell you why. It doesn't provide a drawing of lines or an examination of circumstances or anything else like that. I know you're trying to get back to the Babcock-type world. Do you think Babcock itself, as a matter of statutory interpretation, is too broad? I think it depends on how you read Babcock. I recognize that there wasn't a lot of reasoning there. I don't read Babcock to say that there are no mandatory meetings at which there could be a ULP. I don't read it as the opposite of the categorical rule that the Board is asking for. And I think that is shown by, Your Honor, you referred to the number of cases that followed Babcock where the Board found that there were unfair labor practices and mandatory meetings with specific other facts without overruling Babcock. I think all that exists against the backdrop of Babcock. And again, all I think this Court needs to decide today with respect to the statute is that it is not an unfair labor practice simply because you have a required attendance on a meeting and the expression of views on unionization. I think that is based on, as the Board itself admits, a reading of Section 7 that is overbroad. They say the core of this rule is a determination that the employee has a right to be left alone in the workplace. And that's the only way you get to the broad categorical rule that they're looking for. And I don't think the Section 7, the text of Section 7 says that. It says it's a right to refrain from certain activities, but it doesn't say that you have the right to be left alone in the workplace. And I think, Your Honor, if you were to agree with that, that would erase the sort of core essence of what it means to be employed. That in exchange for pay, the employer can direct the employee to be at certain places at certain times and to do certain things. Now, I did want to turn to the First Amendment because I think that gives this Court another path here. I think you can accept their statutory argument, which again we contest, but even if you assume that all they're getting at is coercive or threatening speech within the of the statute, you still have, they're only doing so with respect to certain, one subject that is covered by Section 7, unionization. The Board itself admits that Section 7 covers other topics, workplace safety, discrimination, you know, HR, right? All the terms and conditions of employment. And they're picking out one topic as unfavored. Now they say, so that makes this Honey Fund on all fours. They say Honey Fund doesn't apply because this is an NLRA case, but it's a red herring because again, I think you can assume that they are only getting at coercive speech. But as the Supreme Court said in the RAV versus City of St. Paul case, the power to prescribe speech on the basis of one content element, that's coercion, does not entail the power to prescribe it on the basis of other content elements. And so Justice Scalia said in RAV that the government can't just prohibit libel with respect to the government. It has, that's, that is a little bit of permissible content discrimination, and then you layer on further unlawful content discrimination. That's what's going on here, except that they're right about the statute. Why isn't there something about the nature of captive, so-called captive, during work hours meetings that provides the government with some sort of a compelling interest to draw those content baselines? There's nothing specific, Your Honor, about mandatory meetings that allows them to distinguish between union, the topic of unionization, and say the topic of workplace safety. Both of those are sections have been topics that occur in mandatory meetings. They have articulated no principal distinction as to why unionization meetings are somehow more coercive than workplace safety meetings. If I could, my time has expired. Because, because, because in one of them, the employees aren't trying to organize into a collective unit that is going to challenge the employer on certain aspects of their benefits. Workplace safety is not the same. Can I offer you one example? Sure. One counterexample to that. Imagine that there's, there's no union, because it doesn't, you don't have to have a union for Section 7 to apply. There's, comes to the, there's a petition circulating amongst the employees to ask the management to buy new hardhats. The management calls a mandatory meeting to address the question of hardhats. And they say, we understand that there's a petition circulating about wanting us to buy new hardhats, the next generation. We would like to explain to you, we want everyone to attend this. We would like to explain to you why these current hardhats are safe. There is similarly an organizing effort there. And if it would be compulsive in the unionization context, it would somehow deter people from going against the employee, employer. I think that same logic would apply to this workplace safety meeting. The part that I think you might be missing in your hypothetical is that once the employer decides no hardhats for these reasons, they're done. On the unionization side, the employer doesn't get the last say. The employee still has to make a decision about whether or not to sign the card to enter into a collective bargaining unit. And that's the big difference between the two. I don't think your hypothetical fits. Well, Your Honor, I... One of them is all employees, employer-centered. The employer makes the decision. On the unionization side, the employer doesn't get to make the decision for the employees. And that's, therein lies the difference, I think, potential difference. Potentially difference, but I don't think it's enough to get out from under a honey fund. And then, of course, we come back to the statute. I don't think that there is, you know, there isn't enough that's coercive about just those two facts, but I've run out of time. All right. You've saved your time for rebuttal. Thank you, Mr. Lin. Mr. Jost. May it please the Court, my name is Micah Jost. If you run out of time and we're still talking to you, I'll give you the same extra time I gave Mr. Lin. Thank you, Your Honor. I'll try to be brief. I think that this case is best disposed of on the simplest ground, which is Section 10F, dealing with the captive audience rule. The Board's captive audience rule in this case was not applied to Amazon. Whether it ever will be is entirely speculative. It forms no part of the basis for the Board's order against Amazon, which finds other violations but dismisses irrelevant parts. Can I ask you a question about this? And this may blend statutory standing with Article 3 standing, which is not a good thing, but I want to admit what I'm doing before I ask you the question. I've lost the name of the case now. I'm sure Judge Newsom or Judge Pryor will help me with it, but there is a case, a Supreme Court case, in which there is an appeal by a prevailing party in a qualified immunity scenario. And the party that technically won on the merits because of a qualified immunity ruling in a 1983 context is the one appealing on the ground that before finding qualified immunity, the Circuit Court had found a constitutional violation. And so the claim is we are hamstrung by that underlying constitutional determination, even though our officers in this case were granted qualified immunity. But going forward, we are now stuck with this Circuit Court ruling, which applies circuit-wide, that this sort of conduct violates the Constitution, and that provides us with injury. I know the case is not the same. I know I'm blending two doctrines, but I want your thoughts about whether or not that sort of thinking has any place here, because that seems to be Amazon's argument at some level, right? We may have won technically in this case because we weren't disciplined, the complaint was dismissed, but now we have this rule sitting on top of us which tells us, don't do this, or we may come after you in the future. I have several points in response, Your Honor. We dealt with those cases in our reply regarding the motion to strike. Those cases, first of all, they do deal with standing. They say nothing about Section 10F, which is a separate argument. Section 10F limits this Court's authority to acting on the Board's order in specified ways. It talks about standing in those cases, and those cases, I think, are clear in limiting their holding to the authority of the Supreme Court itself to develop the law going forward. It recognizes that ordinarily, the principle is that a new precedent that an agency announces, for example, and is not applied against a party does not create standing. So those cases represent a narrow exception. They do not deal with 10F, and in particular, in this case, where it is, again, entirely speculative whether this rule could ever be applied to Amazon, will ever be applied to Amazon, it would be particularly inappropriate to import those principles where, as Your Honor said, the employer, the municipality, whatever, is operating under a cloud based on the ruling before it. In this case, Amazon has not put the kind of basic evidence to establish standing into the record that the Court had in Honey Fund or Speech First. This case, instead, is like Burnett Specialists. Amazon is trying to rest on its appellate representations of counsel and the fact that it simply held these meetings in the past. But in Burnett Specialists, the Fifth Circuit recognized that simply having spoken to your employees about unionization in the past does not meet the standard for standing. And, of course, Amazon cannot show an imminent threat of enforcement, particularly... How would you, how do you think you would put that evidence in the record, given the way that this came up from an agency record? If you're trying to avoid liability on the agency side, one of the last things you're going to do is tell the MLRB, oh, we want to keep doing this day after day after day after day, and we're going to keep doing it unless you tell us to stop. Sure, and there are provisions, I believe it's in Section 10F itself, for asking the Court to remand for any agency to take further evidence. But all of this just underscores the particular procedural posture that we're in. This case is governed by Section 10F. This is not a preliminary injunction. This is not a case against an informal rule issued under the APA. And under those circumstances, it's particularly inappropriate for the Court to proceed where there are no facts. If Amazon wanted to put the facts into the record, it had the burden of trying to do so. But again, regardless of what it claims about, whether it's chilled or not, we can look at the fact that there is not a credible threat of enforcement. The 28J letter, which I apologize that it was submitted so last minute, I acted as quickly as I possibly could to get that before the Court. But that demonstrates that the General Counsel has now asked the Board itself to reverse precedent that Amazon is challenging. What's to prevent the next General Counsel from reversing that? This seems like pretty weak cheese evidence of prosecutorial discretion at best. I can only say, Your Honor, that it's up to the General Counsel to, you know, the General Counsel is appointed by the President, is removable at will by the President, and the different policy goals in different administrations. That has always been the case. Or within the same administration, potentially from week to week. In this case, Your Honor, the General Counsel, the current General Counsel has changed since this case was initiated. The General Counsel has broad unreviewable discretion that the Supreme Court has recognized and acts essentially at the pleasure of the President. So when the administration changes, those priorities can change. But ultimately, of course, if the rule ever is applied to Amazon or some other employer, there will be an opportunity for exactly the kind of review that Amazon is trying to get right now. At this time, the Court is bound by the Deaton Truck case, which says the Court does not review findings, it doesn't review conclusions, to the extent that Amazon is trying to claim that because part of the order is before the Court, therefore, under 10F, it can review the entire order. The Perlotte case from the D.C. Circuit, I think, definitively refutes that. I believe that's the case in which both the union, it was a dues case, dues deduction case against a union, the union was aggrieved, it brought certain issues before the Court, but the charging parties who had received all the relief they were entitled to could not press their issues before the Court. So simply bringing the case itself before a Court does not give the Court the specific authority, what the Court in Deaton referred to as limited authority, to enforce, modify, or set aside. And to be clear, we do not ask this Court to enforce the underlying rule. It can't do so. It's a rule. It's not an order against a party. There is no enforcement. The Shell Chemical case recognizes the Board's authority to seek review under 10F. Those are corresponding, related. Could someone mount an APA challenge to the current NLRB rule? I don't know the details of that, Your Honor. I think if they tried to do so, we could have that argument. So they're like, for example, you know, we would like to do this. The NLRB apparently says we can't do this. The new counsel says, I'm not enforcing it, but we're unsure about our legal rights. We don't want to transgress. We don't want to get disciplined. We don't want to get fined. We don't want to be the subject of an unfair labor practice. So in an abundance of caution, we're suing under the APA, holding that the NLRB's decision in Amazon.com is arbitrary, capricious, and contrary to the language of the Act. Can someone bring that charge? I can't give you a definitive answer on that, Your Honor. There are different portions of our agency that are dedicated. In my case, I work for the Appellate and Supreme Court Litigation Branch, which seeks enforcement of the Board's orders, which is what I'm here to do today. There's a separate portion of the agency, Contempt, Compliance, and Special Litigation Branch, that deals with APA. And I can't tell you the details of how that lawsuit would fare, but certainly it would... No, I don't know whether it would... I'm not asking you for how it would fare. I'm asking you whether, as a subject matter jurisdiction point, someone could bring that claim. And I can't tell you that, Your Honor. All I can tell you is that under the path that Amazon has chosen, which is Section 10F, the Court doesn't have authority. This case is unlike the ICC case, which in any event is not binding here. And I note that we point to at least four different decisions, Deaton, Harrison, Steele, Boeing, Perlott, I guess there's also Richards, that all reinforce our position here specifically on 10F. And Amazon has pointed to no cases arising in the NLRA context. Well, it's so fair, but Mr. Lynn mentioned this BP v. Baltimore case, which deals with the... It's a Stat 1447 statute, but it has a parallel structure, right? And there the Supreme Court says, in effect, the words that I put into Mr. Lynn's mouth, sort of, aggrieved us to part, aggrieved us to all. It's a unitary order. Once you're aggrieved us to part of it, you can challenge all of it. And all I can say is that that is not how the NLRA has ever been interpreted. In Schofield, the Court treated it differently, and it's either the Richards case or Perlott, I can't remember which, and I'm sorry, that takes the Supreme Court at its word in saying, you are aggrieved as to the portion of the order that is against you. It treats it on an issue-by-issue basis. Whether that's dicta or not, it is certainly considered language when the Supreme Court was interpreting final order. The Board does many things that courts can't review. In jurisdictional disputes, it may award the work to one union or the other. That is not a reviewable final order. In election cases, it may fix the bargaining unit or rule on issues of supervisory status, and until that culminates in an order that actually aggrieves a party, there is no review. I believe I heard Amazon concede that if the Board had simply severed this issue, in their view, it would take it out of the same order, and suddenly the Court would undisputedly not have statutory authority to review it. I would submit that if that were the rule, it would promote gamesmanship. It would promote the Board trying to sort of bury its rules in unreviewable decisions. That is not what happened here. That is not what the Board ever does. These cases do not arise very often because the Board's ordinary rule, ordinary practice, is to apply a newly announced rule in the case in which it is announced. It is an exception to apply it prospectively. It is an exception that is done to avoid injustice to the parties. It is an exception that Amazon asked the Board to apply. So, in effect, the Board did what Amazon wanted. Amazon is refusing to take yes for an answer. I think the other reason these cases rarely arise is that most employers do take yes for an answer, employers and unions alike, and do not seek to litigate issues unnecessarily. And again, if constitutional avoidance has any role to play here, it should be that the Court should avoid ruling unnecessarily on a constitutional issue. I want to make just a few brief points on the actual unfair labor practices that were found here. First of all, Amazon, in its brief, expressly does not challenge the findings as to threats to withhold improvements to wages and benefits. I just want to be clear that we all agree that the Board is entitled to summary enforcement, regardless of what else happens. There are also two representations regarding facts that Amazon makes for the first time in its reply brief. Is your request for enforcement limited to those? No, Your Honor. Our request for enforcement goes to the unfair labor practices that the Board found, which are the ones that are unchallenged, but also the solicitation of grievances and implicit promise to remedy them, the disparate application of the solicitation policy, and the threat of discipline for violating that solicitation policy. Can we talk about the latter two, the discriminatory enforcement and the threat of discipline? So with respect to discriminatory enforcement, you may be right that Amazon treated two different employees over the course of many, many years differently. But what about the Walmart doctrine, I'll call it, that an isolated slip-up isn't actionable? So, first of all, factually, to be clear, these are instances that happened eight months apart, which is, I recognize... Oh, I should have said months. I'm sorry. I should have said months. That is a period of time, but it all occurred within the same organizing campaign. There was a single union organizing campaign taking place across that period, and it had not yet concluded when the second occurrence happened. So I think that is one basis for distinguishing those cases. But that's not a basis for distinguishing Walmart, really, is it? In Walmart, I don't believe that there was a petition for an election. I don't know that there was an active union campaign going on at that time. But in any event, what we noted in our brief is that the closeness of the relationship between the enforced-against activity and the not-enforced-against activity was much different. In cases like Walmart and UniFlight, you were dealing with solicitations to buy Avon products, to make a donation to a colleague. Here, instead, what we have is a one-to-one comparison between anti-union solicitation, a violation of the policy, and pro-union solicitation. And I think within the union campaign, within the same campaign, that difference is stark. But wasn't that also true in the case that Walmart relied on for support, the summit bill case? Wasn't that also union and union? I'm not sure, Your Honor. I think there was a correspondence in that case. I'll grant you that I think Walmart's a little bit different. But it seems to me that Walmart stands for a principle that is embedded in board doctrine that would cut against you. I think, Your Honor, to the extent that it stands for that broader principle, I would point the Court to the Conway case, which is a board decision from 2001, which views it a little bit differently. In that case, it takes one example of enforcement, one example of non-enforcement, and says that in that context, there was not a sufficient practice of enforcement such as would demonstrate that the instance of non-enforcement, excuse me if I have this messed up, but there weren't enough examples, essentially, to demonstrate that this was isolated. So I think there is a tension in board precedent there, but I think the board reasonably relies on the principle that is demonstrated in the Conway case, where you have one example, and here there's only one example ever of this rule being enforced in the record, and it was enforced against union activity, anti-union activity was allowed to stand. But I want to briefly note on a factual level— Fowler, can you give him the extra six minutes too, please? Thank you. Thank you, Your Honor. At page 27 of their reply brief, Amazon represents that it had taken down five other posts. That claim comes for the first time that I can find it in their reply brief. I believe it's waived, but also it was never, to my knowledge, argued to the board, and so under Section 10e of the Act, the court lacks jurisdiction to consider that argument. The contemporary CARS case that we cite in our brief has some discussion on that. But in any event, if you look at Administrative Record 1196, which is the internal chat among managers, and the testimony of a senior HR manager at 428 and 29, they make clear that Amazon itself believed it had never taken down a post before. So everyone would have understood that this was novel, that this was unprecedented, and indeed their HR manager said she was shocked that they would do such a thing. To correct one other factual issue, on page 27 of their reply, Amazon claims for the first time that it said it did not make any promises. This goes to the solicitation of grievances by two different agents, Williams and Rebell. If you listen to those recordings, you'll hear that kind of statement only in the Williams speech, which was on November 10. In the Rebell speech on November 11, there are no such representations that Amazon couldn't make promises. And in any event, if you look at the case that Amazon cites for that, Evergreen America, in that case the board in fact rejected arguments concerning that kind of blanket disclaimer where overall the record demonstrated that the employer was making promises. If I could touch briefly on the merits, we again submit that the court should not reach the merits here, but I want to make clear that there are strong bases for distinguishing this case from Honey Fund. The three bases I would emphasize are, first, the underlying right is different. Second, before you discuss Honey Fund, which is on the constitutional side of the divide, can we talk about the act? Certainly, your honor. What is it in the language of the act, section 7, section 8, that allows for a carve-out for this specific type of captive audience meeting? When you say a carve-out... Other mandatory meetings are not prohibited. The NLRB made that pretty clear in its opinion. So the difference, your honor, and first of all, when it comes to other mandatory meetings, I want to emphasize footnote 19 of the board's decision explains we are focusing on the facts of this case, the facts that were before the board. In an adjudication, the board does not purport to reach out and address every possible universe of facts. As we explained in the brief, if that were the rule, then GISL would be a topic-based regulation of speech because it only dealt with the facts that were before the board and were before the court. But section 7 gives employees the right to freely organize, and section 1 of the act embodies those same principles that it's the right of employees to freely organize that impairs commerce. So let me give you this hypothetical. A benevolent employer who thinks that unions are good organizes a mandatory meeting, five minutes in length, at which a couple of executives say, listen, this is your decision. You make it. We think unions are good, and we would love to have a collective bargaining unit to deal with. But if you think you want to go on the way things have been, that's perfectly fine, too. Just, you know, think about it and make the best decision you can make for yourself. Unfair labor practice? I can't speak definitively for the board. I know you can't. We're not putting commissioner hats on you. But you're the attorney here representing the board, and so that is a hypothetical put to you. Unfair labor practice or not? I believe under a strict application of the board's principles here, that would be an unfair labor practice if it was clear that the employees were, if it was established that that was a mandatory meeting. It is mandatory in my hypothetical. Yes. Then I believe under a strict application, yes. That's crazy. That is crazy. May I make two points, though? In the Clark case, Clark Brothers, the employer was not making anti-union speeches. It was advocating on behalf of one union between two. Sure, but that's a very different scenario than the one I gave you, because the employer may think that it's going to have a much easier time dealing with one collective bargaining unit versus another, and it's playing favorites, and it's conveying that favoritism to the employees in a mandatory captive meeting. Understood. I can see why under a case-by-case adjudication, that would be an unfair labor practice, because the union, I mean the employer, sorry, the employer is putting his thumb on the proverbial scale, but in the hypothetical that I presented to you, the employer is making no such pronouncement, and for someone to say that that's an unfair labor practice seems to me to sort of make mincemeat of the text of the Act. The other point that I wanted to make, Your Honor, is simply that... Why am I wrong? Why am I wrong in expressing some skepticism? I think the issue, Your Honor, is that fundamentally it is the coercion, it is the order to attend on pain of discharge that interferes with the range of autonomy, with the realm of personal decision making that employees have to freely organize under the Act. The employer can say those things as long as it doesn't dominate the union, which gets us to Virginia, electric and power. It is already an unfair labor practice for an employer to dominate the formation of a union under Section 8A, but in the hypothetical you are describing, first of all, if those facts came before the Board, it could address them. It could decide, is there a five-minute de minimis exception? Are there any circumstances under which we would choose not to apply this rule as strictly? But ultimately, under the text of the Board's decision here, under the rule that we have to defend, or rather that Amazon is attacking, the Board recognizes that employees are entitled to freely organize. The employer can say what it wants, the union can say what it wants, but neither can use economic coercion to force employees to participate in their campaign one way or another. Unless the Court has any further questions, I ask for enforcement of the Board's order in full and for the Court to strike the arguments that are not properly before the Court. Thank you, Your Honors. Thank you very much. I have, Your Honors, four points that I will try to get through. The first, on Article III and the 28J, Judge Newsom, you raised a good question about the General Counsel. I've already made some points, but one additional point that I think is worth, as a procedural matter, understanding. The fact that the General Counsel has said, in a footnote, that she's urging the Board to overturn the Amazon rule actually shows that she will be enforcing it, because the only way to get the issue before the Board is through the enforcement of the rule. And so, we are playing Russian roulette with whether we're going to be, you know, the employer who's going to be subject to the enforcement action. And we don't know what the Board's going to do. We can't. We have no guarantees that they will overturn it. So, how would that play out practically? You file an unfair labor charge against an employer, and then you ask the NLRB to dismiss the charge because you think it should reverse course? You, the General Counsel. Yeah, I, right. So, she would bring the charge. So, where is the, where is the adversity of viewpoints in that case? Because then, both the employer and the counsel are going to be on the same side of the V. So, where's the adversity in that sort of presentation? I don't think, the Board doesn't have an Article III adversity requirement. No. So, the General Counsel. Yes, Your Honor. So, who's going to be advocating for the Board to keep its current rule? Probably the union intervener, I would think, in that case. That's fair. Okay. The second point, Your Honor, is on statutory standing. I just want to emphasize, the Supreme Court said this in Thompson, it's reiterated a couple times, that statutory standing is a zone of interest test aimed at denying a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be presumed that Congress intended to permit the suit. I think it's really important to remember, as you think about statutory standing, that the, what the Board is asking for here is that nobody can challenge, they didn't have, I think, an answer for you, Judge Jordan, on the APA, that nobody can challenge something that causes an immediate First Amendment harm until whatever day it is that there's another follow-on suit. I think you could, like, I think you could sue under the APA. I don't see any doctrinal blocking path to that. Your Honor, I think if this Court holds that there's no statutory standing here, then we do find our way in through the APA. I do think that such order language, I don't think we heard a good answer to the Baltimore case and the Yamaha case, does, in any event, get a statutory standing. The other, there's two final points, but maybe I'll just make the one. I think you, the answer to your hypothetical, Judge Jordan, illustrated exactly how categorical this rule operates, and one sort of period on that exclamation point is, footnote five of their brief, they concede there that it doesn't matter whether the employees in these meetings even hear what is said. All that matters is that they were required to attend and that there exists the expression of views on unionization. It doesn't matter whether they've heard it. It doesn't even matter if they know what the substance was. Yeah, but you say you can discipline them if they don't pay attention or if they don't attend. Yes, Your Honor, we do. So that concession by him is meaningless. I mean, if you have somebody who attends and is on his or her phone listening to music or a podcast or anything else or playing video games, the employer can discipline him or her. You say that's perfectly okay. Yes, Your Honor, I think... Who are getting at them having to hear it? Yes, we can discipline them for not attending, but I think the point is... No, and you can also discipline them for not paying attention, right? No. No, you can't. No, no, it's only the requirement of attendance. Okay, but... Only the requirement of attendance. So you can have headphones on and be playing video games? Yes, the record here showed that that was... No, no, no. Amazon allows that to happen? All we required was that they... All that was stipulated here is that they were required to attend. They had to badge in and attend. There was no discipline for headphones. There was no discipline for sleeping. And it is not in the record that we said we could discipline them or that we were disciplined. So all of the employees want to... You bring them all into a hall and you say, this is your mandatory meeting. And all the employees say, man, we have a great dance video that you guys got to see. And while the executive is talking for his five or 10 minutes, all the employees huddle up in the back. They bring in a little portable TV. They hook up their video and they're all watching it and dancing. And Amazon is like, that's great. That's just wonderful. The record in this... Happy employees, happy workplace. The record in this case... And my point is, I think it illustrates how far reaching their rule is. The only requirement, the way they define mandatory meeting is required attendance. And the record here, the very facts on which they purported to build this rule did not involve discipline for not listening. Okay. Thank you all very much. All right. Our last case is...